## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re J. Silver Clothing, Inc. | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Case No. 05-10522(PJW) |
| _____ | ) | |
| Jeoffrey L. Burtch, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 07-50814(KG) |
| | ) | |
| Connecticut Community Bank, N.A. | ) | |
| d/b/a The Greenwich Bank & Trust | ) | |
| Company and James J. Fuld, Jr., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | **Re Dkt No. 43 and 49** |

### <u>MEMORANDUM OPINION</u>[1]

The Chapter 7 Trustee (the "Trustee") filed this adversary proceeding against

Defendants James J. Fuld, Jr. ("Fuld") and Connecticut Community Bank, N.A., d/b/a

Greenwich Bank & Trust company (the "Bank") (collectively the "Defendants"), seeking to

recover $485,569.95 (the "Claim Amount") as avoidance claims.  Defendants have moved

for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, made

applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure (the "Defendants'

Motion").  The Trustee has cross-moved for partial summary judgment (the "Trustee's

---

[1] This Opinion constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052.  To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law.  To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

Motion"). This is Defendants' second attempt at summary judgment. By Order, dated October 15, 2008 (D.I. 29), the Court denied Defendants' earlier motion for summary judgment on the basis that the Trustee had raised issues of material fact, namely, whether the parties intended a contemporaneous exchange and the value of the collateral in a liquidation. Thereafter, the parties were unsuccessful in their mediation efforts and have now completed discovery. The Court will grant Defendants' Motion and deny the Trustees' Motion for the reasons which follow.

## FACTS[2]

The Debtor, J. Silver Clothing, Inc. ("Debtor"), was a retailer of modestly priced clothing at approximately 29 urban locations. Fuld had invested in Debtor initially in 1998 as a minority shareholder. Deposition Transcript for James J. Fuld, Jr. ("Fuld Tr.") at p. 5. Debtor went through a prior Chapter 11 bankruptcy reorganization beginning in December 2000. Fuld Aff., ¶ 2. Fuld's interest was liquidated in connection with that reorganization. *Id.* In the fall of 2003, Fuld reinvested in Debtor through a capital infusion and acquired a majority ownership interest in Debtor's parent company. Fuld Tr. at pp. 6-8. Fuld was Debtor's chairman of the board. Fuld Tr., pp. 16-17. Fuld did not hold an executive position with Debtor. Fuld Aff., ¶ 2.

---

[2] The Defendants have submitted the following declarations/affidavits in support of the Defendants' Motion: Declaration of Robert S. Bland ("Bland Dec."); Declaration of Scott Gerhard ("Gerhard Dec."); and Affidavit of James J. Fuld, Jr. ("Fuld Aff."); and Affidavit of Richard A. Muskus, Jr. ("Muskus Aff."). The Trustee did not submit any declarations or affidavits in support of the Trustee's Motion.

The officers of Debtor were: Robert Bland, Chief Executive Officer; John Cerreta, President; Richard Silver, Vice President and Executive Merchandising Manager; and, Joseph Bastone, Chief Financial Officer. Fuld Tr. at pp. 13-14. Fuld had no outside business relationships with any of the executives. Fuld Aff., ¶ 6. Fuld had no responsibility for Debtor's day to day operations. Fuld Aff., ¶ 7.

Fuld is the President and owner of a consulting company which Debtor hired to seek additional sources of funding, whether through debt or equity, to expand and improve business. Fuld Tr. at 14-21.

Seeking to expand and improve its business, Debtor issued privately placed notes during 2004. Fuld Tr. at pp. 17-18. Fuld purchased some of these notes. Fuld Tr. at p. 18. Fuld personally invested $1,152,000 in these notes (including his November 2003 purchase), representing a majority of the notes issued. Fuld Aff., ¶ 3.

During the fall of 2004, Debtor tried but failed to obtain strategic partnerships or venture capital investment. Debtor asked Fuld for a loan. Fuld Aff., ¶ 4.

Fuld had discussions with several banks, but the only bank willing to loan money to Debtor on a timely basis was the Bank. Fuld Tr. at pp. 22-23; Fuld Aff., ¶ 4. The loan was a revolving credit loan in an amount that would not exceed $1 million (the "Loan"). Muskus Aff., Ex. 1. The Bank required a first lien on all of Debtor's business assets, not including real estate assets. Muskus Tr. at pp. 14, 21-22. The Bank also required a guarantee from Fuld. Muskus Tr. at pp. 18-19. Fuld proposed a $500,000 guarantee, but the Bank insisted

upon a guarantee of $1 million.  Fuld Aff., ¶ 5, Muskus Aff., Ex. 1.  Fuld's guarantee allowed a more timely closing, a lower interest rate and more favorable repayment terms. Muskus Aff., ¶ 3.

The Bank took a first lien on the following Debtor assets: accounts, as-extracted collateral, chattel paper, deposit accounts, documents, equipment, farm products, fixtures, general intangibles, inventory, instruments, investment property, letter of credit rights, other goods, supporting obligations, and the proceeds and products of all categories, not including any real estate leases (the "Collateral").  Muskus Tr. Ex. 4 at §§ 1.7, 3.1.  The Bank ensured its first lien position by causing Debtor to file UCC-3's cancelling prior recorded security interests in Debtor's assets and a certification that no liens existed in Delaware.  Muskus Aff., Ex. 3.  The Bank also required Fuld to subordinate his notes.  Muskus Aff., Ex. 4.

The Loan closed on December 1, 2004.  Muskus Tr., Ex. 4.  Debtor entered into a Loan and Security Agreement (the "Loan Agreement") with the Bank and Debtor executed a Credit Agreement and Commercial Revolving Loan Note (the "Note").  Bland Dec., ¶ 3, Ex. A.  As the Loan Agreement required, Debtor assigned, pledged and granted the Bank a continuing security interest in the Collateral.  *Id.*  The Loan Agreement specifically excluded leases on real property in which Debtor was a tenant.  Fuld Tr., pp. 29-30.  Fuld gave his guarantee.  Fuld Tr., p. 31.

Problems ensued when the Bank attempted to perfect its security interest in the Collateral.

4

The Bank's counsel mailed a UCC-1 Financing Statement (the "First UCC-1") to the Delaware Division of Corporations on December 3, 2004, two days after the Bank and Debtor executed the Loan, and one day after the Bank made the first distribution thereunder. Gerard Dec., ¶ 4.

The Division of Corporations rejected the First UCC-1 for failure to properly list Debtor's address and returned it to the Bank's counsel. Gerard Dec., ¶ 5. Counsel received the rejected First UCC-1 on December 18, 2004, and ran a title search to ensure that no intervening lien had been placed on the Collateral. Gerard Tr., at pp. 22-24; Gerard Dec., ¶ 6. On December 20, 2004, the Bank's counsel mailed a second, corrected UCC-1 (the "Second UCC-1") to the Division of Corporations. *Id*.

Debtor's counsel, through "the Delaware Service used by her office," learned that no UCC-1 was on record at the Delaware Department of State. Debtor filed its own UCC-1 with the Division of Corporations on December 30, 2004. Muskus Tr., Ex. 9. The Debtor amended the UCC-1 it had submitted later the same day, December 30, in order to designate that the Collateral did not include the real estate leases. *Id*.

The Division of Corporations stamped the Bank's Second UCC-1, which the Bank's counsel had mailed on December 20, 2004, as filed on January 4, 2005. Muskus Tr., Ex. 9. The Bank did not learn of the rejection of the First UCC-1 and resultant delay in the recording of its lien until after the Second UCC-1 was recorded. Muskus Aff., ¶ 4.

By mid-January 2005, Debtor concluded that liquidation and a bankruptcy filing were inevitable. Debtor sought purchasers and after approaching numerous buyers, only Hoffman Acquisition Corp. ("Hoffman") made a firm offer, which was to purchase 29 stores for $1.4 million. Hoffman would purchase some stores immediately and others after Debtor filed a pre-packaged bankruptcy petition. Debtor was unable to obtain landlord permission to transfer the 29 leases, which required revising the sale. Hoffman now agreed to purchase 10 stores leases and store assets for $600,000. There would not be a bankruptcy court's approval of the sale free and clear of liens and encumbrances, and Hoffman therefore required the Bank to release its lien on Debtor's assets. The sale to Hoffman closed on February 16, 2005 (the "Hoffman Sale") and, as required by the Loan Agreement, Hoffman, on behalf of Debtor, paid the Bank the $485,569.95 which Debtor owed, thereby enabling the Bank to release its lien as Hoffman required.

The Hoffman Sale was not sufficient to prevent the necessity of Debtor's bankruptcy. Debtor filed its petition under chapter 11 with the Court on February 25, 2005. On the petition date, Debtor had the following assets: $459,381 cash (after paying the Loan) and $23,933 in deposits. Fuld Aff., Ex. A. On April 12, 2005, Debtor's case was converted to a case under chapter 7.

## THE TRUSTEE'S CLAIMS

The Trustee's claims arise from the Loan and its repayment (the "Repayment").  The claims, contained in the Complaint, are as follows:

Count I:      Avoidance and Recovery of Fraudulent
                    Transfers Against Fuld - 11 U.S.C. §544:

The Trustee has alleged that he has the right of recovery as against Fuld as if the Trustee was a creditor with a judicial lien on the property of the Debtor, as of February 25, 2005, the date of the Petition, including the sale proceeds of the Hoffman Sale.  The Bank had no secured position in any collateral of the Debtor because §547(e) established a bright line standard for the perfection of a lien, or because the Bank's action through its agent and counsel evinced dilatory or negligent conduct.

Count II:     Avoidance and Recovery of Fraudulent
                    Transfers Against Fuld - 11 U.S.C. §548:

The Trustee has alleged:  (i) Debtor transferred to the Bank the sales proceeds through the Hoffman Sale; (ii) the transfer of the Hoffman Sale proceeds took place less than one month prior to the filing of bankruptcy; (iii) Debtor was insolvent or became insolvent as the result of the transfer; (iv) Debtor received less than reasonably equivalent value in exchange for the transfer in that the transfer provided pay-off for a loan that was unsecured or, in any event, was alternatively secured by assets of Fuld; (v) the only benefit directly related to the use of the sale proceeds of the Hoffman Sale was the release of the secured assets of Fuld pledged to the Bank to collateralize the Loan.

Count III:    Avoidance of Preferential
                    Transfers Against Fuld -11 U.S.C. § 547:

The Trustee has alleged: (i) that the transfer of the sale proceeds of the Hoffman Sale to the Bank was for the benefit of Fuld in achieving the release of the secured assets of Fuld pledged to the Bank to collateralize the Loan; (ii) the transfer was on account of an antecedent debt owed by Debtor to the Bank resulting from a loan made by the Bank to Debtor in December 2004; (iii) the transfer was made while Debtor was insolvent; (iv) the transfer was made within one year before the filing date; (v) Fuld was an insider; (vi) the transfer enabled Fuld to receive more than he would have received if the case were initially filed under Chapter 7, if the transfer had not been made, and Fuld was the indirect beneficiary of the transfer of the Hoffman Sale proceeds to the Bank.

Count IV:    Recovery of Fraudulent and Preferential
             <u>Transfers Against Fuld - 11 U.S.C. §550:</u>

The Trustee has alleged (i) that Fuld was the immediate or mediate transferee of the transfer of the Hoffman Sale proceeds to the value of the lesser of the sale proceeds or the collateral pledged to the Bank; (ii) Fuld's actions were not taken in good faith; (iii) and either knew or should have known that the transfer would be voidable in the bankruptcy of Debtor which he knew was contemplated and was in fact filed within 2 weeks of the transfer.

Count V:     <u>Breach of Fiduciary Duty Against Fuld:</u>

The Trustee has alleged; (i) that Fuld was a director of Debtor; (ii) that Fuld controlled the Board of Directors; (iii) that Fuld knew or should have known that Debtor was insolvent; (iv) that he had a fiduciary duty to the unsecured creditors; (v) that Fuld's actions were taken to protect his own interests rather than the unsecured creditors.

Count VI:    <u>Equitable Subordination of Fuld's Claims - 11 U.S.C. §510(c):</u>

The Trustee alleges that Fuld's actions either as statutory insider pursuant to §101(31) or a non-statutory insider pursuant to *Winstar* require under the principals of equitable subordination that any allowed unsecured claim of Fuld be subordinated to all other unsecured claims.

Count VII:   Avoidance of Preferential Transfers Against
             <u>the Bank (Security Interest Transfers) - 11 U.S.C.§547:</u>

The Trustee alleges that the Bank failed to properly perfect a security interest in collateral of the Debtor and therefore had nothing greater than an unsecured interest in the proceeds of the Hoffman Sale.

Count VIII:  Avoidance of Preferential Transfers Against
             <u>the Bank (Loan Repayment Transfers) - 11 U.S.C. § 547:</u>

The Trustee alleges (i) that the transfer of the sale proceeds of the Hoffman Sale to the Bank was for the benefit of the Bank to pay-off the Loan to Debtor; (ii) the transfer was on account of an antecedent debt owed by Debtor to the bank resulting from the Loan; (iii) the transfer was made while Debtor was insolvent; (iv) the transfer was made within ninety before the filing date; (v) the transfer enabled the Bank to receive more than it would have received if the case were initially filed under Chapter 7.

Count IX:    <u>Recovery of Preferential Transfers Against the Bank - 11 U.S.C. § 550:</u>

The Trustee has alleged (i) that the Bank was the immediate or mediate transferee of the Hoffman Sale proceeds to the extent of the value of the lesser of the sale proceeds or the collateral pledged to the Bank; (ii) the Bank's actions were not taken in good faith; (iii) and the Bank either knew or should have known that the transfer would be voidable in the bankruptcy of Debtor which was contemplated and was in fact filed within 2 weeks of the transfer.

Count X:    <u>Disallowance of All Claims - 11 U.S.C. § 502(d):</u>

Section 502(d) requires the disallowance of any claim of a transferee of a voidable transfer in toto, where the transferee, either the Bank or Fuld, has not re-paid funds as required under the sections under which the transferee"s liability arises.

## STANDARD OF REVIEW

Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  At the summary judgement stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Pearson v. Component Tech. Corp.*, 247 F.3d 471 (3d Cir. 2001) (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317 (1986)); *see also* Fed. R. Civ. P. 56(c)).

In all cases, summary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law.  Where the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest on the

allegations of pleadings and must do more than create some metaphysical doubt. *Petruzzi's IGA Supermarkets v. Darling-Del. Co., Inc.*, 998 F.2d 1224 (3d Cir. 1993).

Once the moving party has made a proper motion for summary judgment, the burden shifts to the non-moving party, pursuant to Rule 56(e), which states, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Before a court will find that a dispute about a material fact is genuine, there must be sufficient evidence upon which a reasonable trier of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## DISCUSSION

### I. APPLICABILITY OF SECTION 547

The threshold and pivotal issue in deciding the motions is whether the Bank held a valid security interest in the Collateral and thereby qualifies for the exception under Bankruptcy Code Section 547(c)(1) to the Trustee's preference avoidance powers. The Court finds that Debtor's granting of a security interest meets the requirements of § 547(c)(1) and

is excepted from the trustee's power to avoid preferences.  Debtor's transfer of the security

interest in the Collateral to the Bank was intended by the parties as a contemporaneous

exchange with the Bank for the Bank's $1 million revolving credit loan to Debtor Section

547(c)(1)(A)), and was, in fact, substantially contemporaneous (§ 547(c)(1)(B)).

## Applicable Statutes

### Section 547(c).

> The trustee may not avoid under this section a transfer –
> > (1) to the extent that such transfer was –
> > > (A) intended by the debtor and the creditor to or for whose
> benefit such transfer was made to be a contemporaneous exchange for new
> value given to the debtor; and
> > > > (B) in fact a substantially contemporaneous exchange . . .

### Section 547(e)(2).

> For the purposes of this section, except as provided in paragraph (3) of
> this subsection [inapplicable], a transfer is made –
> > (A) At the time such transfer takes effect between the transferor and the
> transferee, if such transfer is perfected at, or within 10 [changed to 30 by
> BAPCPA] days after, such time, except as provided in subsection (c)(3)(B);
> > (B) at the time such transfer is perfected, if such transfer is perfected
> after such 10 days; or
> > (C) immediately before the date of the filing of the petition, if such
> transfer in not perfected at the later of –
> > > (i)  the commencement of the case; or
> > > (ii) 10 days after such transfer takes effect between the transferor
> and the transferee.

## Parties' Positions

In his Complaint, the Trustee seeks to avoid Debtor's transfer of a security interest in

substantially all of its assets to the Bank, which occurred within the preference period.  The

Defendants move for summary judgment, arguing that the transfer meets the requirements of § 547(c)(1), which insulates a transfer from the Trustee's avoidance powers.  In order to be exempt under § 547(c)(1) from the Trustee's avoidance powers, a transfer must meet both of the requirements of that subsection, *viz.*, intended by the debtor and the creditor to be a contemporaneous exchange and is, in fact, a contemporaneous exchange.

The Trustee argues that the transfer meets neither of the requirements, while Defendants argue that the transfer clearly satisfies both and that summary judgment is appropriate.

<u>Intent</u>

Trustee avers that the parties to the transfer – Debtor and the Bank  –  did not intend for the exchange to be contemporaneous, as required by § 547(c)(1)(A).  In the alternative, the Trustee argues that the Defendants have not met their evidentiary burden regarding intent and that the Court must decide this issue after a trial.  Defendants argue that the parties' clearly intended for the exchange to be contemporaneous and that the evidence supports a finding in Defendants' favor.

<u>Case Law</u>

The determination of the parties' intent is a question of fact.  *Creditors' Committee v. Spada (In re Spada)*, 903 F.2d 971, 975 (3d Cir. 1990).  In order to sustain a finding of intent, there must be some manifest desire by the parties of a contemporaneous exchange. *Computer Personalities Systems, Inc. v. Aspect Computer (In re Computer Personalities*

*Systems, Inc.)*, 320 B.R. 812, 818 (E.D. Pa. 2005)(citing *In re Spada*, 903 F.2d at 975).

Defendants have the burden of establishing both elements of § 547(c)(1).  11 U.S.C. § 547(g).  However, if a defendant submits evidence supporting a finding that the parties intended to complete a contemporaneous exchange for new value, "[t]he Plaintiff's mere statement that there was no intent for the exchange to be substantially contemporaneous is insufficient to rebut this evidence.  *HLI Creditor Trust v. Hyundai Motor Co. d/b/a Hyundai Motor Co., Ltd. (In re Hayes Lemmerz Internat'l, Inc.)*, 329 B.R. 136, 140 (Bankr. D. Del. 2005)(citing *Celotex Corp. v. Catrett)*, 477 U.S. 317, 324 (1986)(denying summary judgment to defendant due to failure of defendant to provide evidence re circumstances around delay in perfection).

## Evidence

The documents underlying the Loan support only a finding that the parties intended for the exchange to be contemporaneous.  The Bank's "Commercial Loan Presentation," dated November 10, 2004, reflects that the Loan would be secured. Muskus Aff., Ex. 5.  The Loan Term Sheet, dated November 29, 2004, made it understood that the Loan would be secured by a UCC-1 filing and a security agreement securing Debtor's assets and a $1 million guarantee by Fuld.  Muskus Aff., Ex. 1.  The Loan Agreement itself, executed on December 1, 2004, provides for the Bank's security interest.  Bland Dec., Ex. A.  The undisputed evidence provided in the declarations and affidavits of the individuals at the center of the transaction further supports a finding that the parties understood and intended that the Bank

would have a secured, first lien.

Robert S. Bland, Debtor's CEO at the time of the Loan, stated in his Declaration that he was fully familiar with the Loan negotiations and was present at the Loan closing, Debtor was not able to obtain financing on an unsecured basis and the Bank required a first lien on as a condition to making the Loan.  Bland Dec., ¶ 3.

The Bank's counsel, Scott M. Gerard, averred that:

> It was the intention of all parties to the transaction that the Loan be secured by a lien on and security interest in all of [Debtor's] assets other than its interests as tenant in certain retail store leases (all such property other than leases being hereinafter referred to as the "Collateral").  Absent a perfected security interest in the Collateral, [the Bank] would not have made the Loan.

Gerard Dec., ¶ 3.

Richard A. Muskus, Jr., the current President of the Bank and the primary loan officer at the time of the Loan, offered that "[a]t all times, the Bank only contemplated completing the Loan if it had a first priority lien on the Collateral and Fuld's Guarantee."  Muskus Aff., ¶ 3.

Defendants have also provided the Court with direct evidence that Debtor intended and took action to provide the Bank with a first lien on the Collateral.  Prior to the Closing on the Loan, the Bank required Debtor to file a UCC-3 (Financing Statement Amendment) to clear a lien in Connecticut and a certification of no liens in Delaware.  Muskus Aff., Ex. 3.  The obvious reason was to give effect to the parties' intent to provide the Bank with a first lien on the Collateral.  The Debtor and the Bank definitively gave substance to their mutually

understood intent.  Furthermore, the Debtor also filed a UCC-1.

Effect of Personal Guarantee

The Trustee argues that the parties did not intend for the transfer to be contemporaneous because the Bank made the transfer upon reliance on Fuld's personal guarantee and not upon the security interest in the Collateral.

> The Trustee believes that the evidence, even if circumstantial, will establish that one of the reasons, if not the major reason, for the lack of concern by [Bank] lawyers about obtaining a perfected lien upon [Debtor's] collateral, was that, in reality, the security for the Loan was the collateral provided to [Bank] by Mr. Fuld.

Trustee's Opposition and Opening Brief. p. 15.

Fuld's personal guarantee does not negate the parties' intent to create and perfect a security interest in the Collateral.  Multiple means of securing payment are not uncommon, particularly with company's facing financial challenges. The Defendants are correct that the relative importance to the parties of the security interests – the personal guarantee versus the lien on Collateral – is not relevant to this Court's determination of whether the parties' intended for Debtor to grant a security interest in the Collateral contemporaneously with the Bank providing new value in the form of Loan funds.

"Substantially Contemporaneous"

Section § 547(c)(B) requires that a transfer be "in fact a substantially contemporaneous exchange" in order to be excepted from the trustee's avoidance powers.

15

Parties' Arguments

The Trustee contends that the transfer of the security interest to the Bank was not in fact substantially contemporaneous with the granting of the Loan, as required by Section 547(c)(1)(B). The Trustee's argument rests on the alleged interplay between § 547(c)(1)(B) and § 547(e)(2), which determines when a transfer is "made."

Section 547(e)(2) provides that:

> For the purposes of this section, except as provided in paragraph (3) of this subsection [inapplicable], a transfer is made –
> (A) At the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B);
> (B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or
> (C) immediately before the date of the filing of the petition, if such transfer in not perfected at the later of –
> (i) the commencement of the case; or
> (ii) 10 days after such transfer takes effect between the transferor and the transferee.

11 U.S.C. § 547(e)(2)[3]

The Trustee asserts that the 10-day time frame set forth in § 547(e)(2) is a bright-line limit as to whether a transfer is substantially contemporaneous, such that a transfer perfected after the 10-day period specified in § 547(e)(2) cannot, as a matter of law, be deemed

---

[3] In 2005, legislation known as the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") became effective. The events in question occurred pre-BAPCPA. BAPCPA changed "10 days" to "30 days" throughout § 547(e)(2). The issues the Trustee raises concerning intent and contemporaneous exchange would not be viable had BAPCPA been in effect at the time of the Loan. BAPCPA became effective on October 17, 2005 and is not applied retroactively. The parties agree that the BAPCPA amendment does not apply.

substantially contemporaneous.  This would disqualify the Loan, which was undisputedly perfected more than ten days after its effective date of December 1, 2004.  Defendants argue that the ten day limit of § 547(e)(2) should not, and was never intended to, control a court's determination of whether a transfer was "substantially contemporaneous."  The Third Circuit has not addressed the issue, but at least six other Courts of Appeal have.

<u>Analysis</u>

The First and Sixth Circuits have adopted the bright-line rule:  if a transfer extends beyond the 10-days provided for by § 547(e) then the exchange is not substantially contemporaneous.  *Collins v. Greater Atlantic Mortgage Corp. (In re Lazarus)*, 478 F.3d 12 (1st Cir. 2007); *Ray v. Security Mutual Finance Corp. (In re Arnett)*, 731 F.2d 358 (6th Cir. 1984).

The majority of Circuit Courts that have addressed the issue, however, have rejected a bright-line rule and found that § 547(e) does not set the parameters for a "substantially contemporaneous" analysis.  *See, e.g., Pine Top Insurance Co. v. Bank of America Nat'l Trust & Savings Assoc.* and *Pine Top Insurance Co. v. Century Indemnity Co.* (consolidated appeal), 969 F.2d 321 (7th Cir. 1992)(applying interpretation of preference law under the Bankruptcy Code to a voidable preference dispute under Illinois state insurance law); *Lindquist v. Dorholt (In re Dorholt, Inc.)*, 244 F.3d 871 (8th Cir. 2000); *Dye v. Rivera (In re Marino)*, 193 B.R. 907 (9th Cir. B.A.P. 1996); *Gordon v. Novastar Mortgage, Inc. (In re Sharma)* and *Gordon v. ABN Amro Mortgage Group, Inc.* (*In re Hedrick*)(consolidated

appeal), 524 F.3d 1175 (11th Cir. 2008).

The Court agrees with the majority of courts, and holds that § 547(e) does not inform the "substantially contemporaneous" requirement of § 547(c). The Court rejects the bright-line rule in favor of the consideration of the totality of circumstances.

"[T]he modifier 'substantial' makes clear that contemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances (e.g., length of delay, reason for delay, nature of the transaction, intentions of the parties, possible risk of fraud) surrounding the alleged transfer." *Pine Top*, 969 F.2d at 328 (quoted by *Marino*, 193 B.R. 914); *See also HLI Creditor Trust v. Hyundai Motor Co. (In re Hayes Lemmerz Internat'l, Inc.),* 329 B.R. 136, 140 (Bankr. D. Del. 2005).

In *Arnett*, the pro-bright line Sixth Circuit relied heavily on its interpretation of Congressional intent and statutory analysis, finding that Congress clearly intended for the § 547(e) time standard to apply to § 547(c). This Court disagrees and adopts the reasoning of the Eighth and Eleventh Circuits:

> Congress knew how to adopt a specific time limit; it did so in the purchase money security interest exception, § 547(c)(3). It chose a less rigid standard for § 547(c)(1), no doubt because that provision governs a wider variety of loans and credit transactions. We must construe the statute accordingly.

*Dorholt*, 224 F.3d at 874.

> Section 547(c)(1)(B) does not set out a bright line rule. It does not refer in any way to the ten-day period contained in § 547(e)(2)(A) or to any other provision's time standard. Congress chose, for whatever reason, not to make ten days the time measure for § 547(c)(1)(B); it chose instead to make "substantially contemporaneous" the standard. We have no license to assume

18

that Congress did not mean what it said in § 547(c)(1)(B), but we are instead bound to assume that it meant exactly what it said.

*Hedrick* 524 F.3d at 1186.

The Sixth Circuit also found that not using § 547(e) as the source of a bright-line rule for § 547(c) purposes renders § 547(e) superfluous; the Court finds otherwise. *See Arnett*, 731 F.3d at 361.   Section § 547(e) serves the essential purpose of determining when a transfer is made, which must be established in order to ascertain whether the transfer occurred during the preference period under § 547(b)(4); Section  547(e) is necessary for a preference analysis regardless of any effect it may have on the interpretation and application of § 547(c). *Dorholt*, 224 F.3d at 874.

In *Hayes Lemmertz*, 329 B.R. at 140-41 (Bankr. D. Del. 2005), Judge Walrath addressed "substantially contemporaneous."   Judge Walrath acknowledged the conflict between the "strict 10-day rule" and the "majority of courts" which examine the "totality of the circumstances."   Judge Walrath found that she lacked evidence necessary to analyze whether the exchange was "substantially contemporaneous" applying the flexible approach rather than the "strict 10-day rule."   In doing so, it is likely that Judge Walrath was rejecting the 10-day, bright-line rule.

In summary, the Court concludes that Section 547(e) does not command the Court to apply the 10-day limitation inflexibly.   Instead, the Court will examine all of the circumstances determining the parties' intent.

<u>Debtor/Bank Exchange</u>

The Court now turns to an analysis of the transaction between Debtor and the Bank to determine whether the transaction was substantially contemporaneous when the totality of the circumstances is considered. The Court finds that it was.

To recap the relevant facts: On December 1, 2004, the Loan from the Bank to Debtor closed. On December 2, 2004, the Bank made the first disbursement to Debtor under the Loan. On December 3, 2004, two days following the Loan's closing, the Bank's counsel, Scott Gerard, mailed a UCC-1 financing statement to the Delaware Secretary of State. The Delaware Secretary of State's office rejected that UCC statement for failure to list Debtor's address; Mr. Gerard received the rejected copy on December 18, 2004. Two days later, on December 20, 2004, he mailed a corrected UCC-1. The Delaware Secretary of State accepted the corrected UCC statement on December 30, 2004. Gerard Declaration ¶¶ 4-7.

The delay in question measures twenty-eight days, from the initial transfer of funds under the Loan on December 2, 2004, to the Delaware Secretary of State's acceptance of a UCC-1 statement on December 30, 2004. The Court finds that a twenty-eight day delay does not disqualify a transfer from being deemed substantially contemporaneous. Rather, the Court will look to the totality of the circumstances, including the reason for the delay, the intent of the parties, and the possibility of fraud. *See Pine Top*, 969 F2d at 328.

20

As discussed above, the Court finds that the parties intended for the transfer to be contemporaneous.  The Court also finds that the delay in perfection was caused by inadvertent error and was not purposeful.  Mr. Gerard's actions – his prompt initial submission of a UCC-1 following the Loan closing and his prompt submission of a corrected UCC-1 following receipt of the rejected statement – demonstrate his intent immediately to perfect the Bank's security interest, and that there was no "lack of concern" by the parties to perfect the lien.

Furthermore, no prejudice resulted from the delayed perfection.  No third parties sought to perfect a competing lien on the Collateral, and no third parties relied on the results of a lien search conducted between the time the Loan closed and when the lien was finally recorded.

Given these findings, the Court deems Debtor's transfer of a lien on the Collateral to the Bank to have been substantially contemporaneous with the Bank's transfer of funds to Debtor under the $1 million revolving credit facility.

## II.  FRAUDULENT CONVEYANCE
## COUNTS I, II

The Court has determined that the Repayment was a substantially contemporaneous exchange pursuant to Section 547(c)(1).  The Court now turns to the Trustee's claims for

fraudulent transfer against Fuld (Counts I and II) pursuant to Sections 544 and 548[4]; and

Delaware law, 6 Del.C. §§ 1304 and 1305[5].  In order to prevail on his claims, the Trustee

must prove that Debtor did not receive reasonably equivalent value for the Repayment.  The

Defendants contend, and the facts support their contention, that the Bank was validly, fully

and unavoidably secured in the Collateral.  In addition, the Trustee has not provided facts to

controvert the Defendants' proof that their secured lien was valid and that the Bank was fully

secured.

---

[4]  11 U.S.C. § 548.  Fraudulent transfers and obligations

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

[5]  The Delaware statutory provisions also speak in terms of "reasonably equivalent value." Delaware law is applicable pursuant to Bankruptcy Code Section 544.

Having found that the Defendants were fully secured, if he is to sustain the fraudulent transfer claims the Trustee must prove that the Bank was undersecured at the time of the Repayment.   The undisputed facts show otherwise.   At the time of the Repayment of $485,569.95, the Bank held a security interest in Debtor's   cash, accounts receivable, instruments, inventory, proceeds from the sale of inventory, equipment, furniture, fixtures and deposits.   The value of the collateral included (Fuld Affidavit, Exhibit A):

|  |  |
|---|---|
| - Cash | $290,272 |
| - Inventory | $275,000 |
| - Landlord Security Deposits | $ 39,000 |
| - Total | <u>$604,272</u> |

The Trustee disputes the Bank's security interest in Debtor's cash, arguing that the Bank did not have a Deposit Account Control Agreement[6] with Debtors, as required by 6 Del. C. §§ 9-312(b) and 9-315(c) and (d), which provides that perfection of a security interest in a deposit account requires control.

---

[6]  A "deposit control agreement" is a contract between a bank, account owner and a secured party, here the Bank, which acknowledges the ownership of the account and the agreement to allow the security interest in the account.

The Bank had a valid, perfected security interest in Debtor's inventory. Therefore, pursuant to 6 Del. C. § 9-315[7], the Bank also had a valid perfected security interest in all proceeds from inventory sales in the 20 days prior to the determination of the Bank's security. It is therefore the interest in the proceeds in which the Bank was secured, and the Trustee's focus on the Debtor's bank accounts is the proverbial "red-herring." Defendants have presented ample evidence, which the Trustee does not refute with conflicting evidence. Such evidence includes the records of inventory sales for the 20 days prior to the Repayment and the 20 days prior to the bankruptcy filing, together with Debtor's bank account statements showing the cash in the accounts on the date of the Repayment and the Petition

---

[7]  § 9-315. Secured party's rights on disposition of collateral and in proceeds

*     *     *

(c) Perfection of security interest in proceeds. - - A security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected.

(d) Continuation of perfection. - - A perfected security interest in proceeds becomes unperfected on the 21st day after the security interest attaches to the proceeds unless:

(1) the following conditions are satisfied:

(A) a filed financing statement covers the original collateral;

(B) the proceeds are collateral in which a security interest may be perfected by filing in the office in which the financing statement has been filed; and

(C) the proceeds are not acquired with cash proceeds;

(2) the proceeds are identifiable cash proceeds; or

(3) the security interest in the proceeds is perfected other than under subsection (c) when the security interest attaches to the proceeds or within 20 days thereafter.

24

Date.  Fuld Aff., Exhibits A, B and E.  This evidence traces the inventory sales to the deposits and confirms the validity of the security interest in the  proceeds from the sales of inventory.

No question remains that the Debtor received reasonably equivalent value for the Repayment.  The Court's finding that there was reasonably equivalent value does not even take into account the furniture, equipment and fixtures from 29 stores or inventory which Debtor had not sold at the Petition Date, in all of which the Bank had a valid, perfected security interest.  The Bank was, indeed, over secured.  Therefore, the Court must conclude that the Bank's release of its liens to enable the Hoffman Sale to proceed provided the Debtor with reasonably equivalent value for the Repayment.  *See*, e.g., *First National Trust Ass'n v. American Bank and Trust* (*In re Adventist Living Centers, Inc.*), 174 B.R. 505 (Bankr. N. D. Ill 1994).  Accordingly, the Bank is entitled to the finding that the Repayment was not a fraudulent conveyance.

### III.  PREFERENTIAL TRANSFERS
### COUNTS III, IV, VII, VIII, IX

The Trustee's claims of preferential transfers must likewise fail based upon the Court's findings that the Bank held valid perfected liens on Debtor's assets, and that Debtor received reasonably equivalent value for the Repayment. In order to prevail on his claim of preferential transfers, the Trustee must satisfy all of the requirements of Bankruptcy Code § 547(b)(5) which requires proof that the Bank received more than it would have received if:

> (A)   the case were a case under chapter 7 of this title;
>
> (B)   the transfer had not been made; and
>
> (C)   such creditor received payment of such debt to the extent provided by
>          the provisions of this title.

11 U.S.C. § 547(b)(5).  The Trustee argues that the Bank would not have received payment

of its entire claim based upon there being unsecured claims totaling $3,524,054.55.

However, the Trustee's argument is based on the erroneous assumption that the Bank is an

unsecured creditor.  The Court has already held that the Bank is a secured creditor.  In a

Chapter 7 liquidation, the Bank would receive priority over the unsecured creditors and

therefore would receive payment in full.

The Trustee has also asserted preference claims against Fuld based on the release of

his guarantee by virtue of the Repayment.  The release of the guarantee does not constitute

a preferential transfer in favor of Fuld, as the case law makes clear.  The Repayment

produced no benefit to Fuld because, as a guarantor, he had no liability at the time of the

Repayment.  *In re Erin Food Services, Inc.*, 980 F.2d 792, 801, n.15 (1st Cir. 1992); and

*Levit v. Ingersoll Rand Fin. Corp.* (*In re Deprizio*), 874 F.2d 1186, 1199-2000 (7th Cir.

1989).  Here, again, it is the Court's finding that the Bank held an over secured, valid,

perfected security interest in the Collateral that leads to and requires the resulting finding that

the Bank and Fuld did not receive a preferential transfer.

## IV.  BREACH OF FIDUCIARY DUTY AND EQUITABLE SUBORDINATION (COUNTS V and VI)

The Trustee has asserted perfunctory claims of breach of fiduciary duty and for equitable subordination of Fuld's claims against Debtor.  The Trustee has not adduced any facts to rebut the Defendants' evidence which shows that the Repayment was necessary to enable the Hoffman Sale to proceed, and the Trustee has not challenged the bona fides of the Hoffman Sale.   Instead, the Trustee relies upon the allegations in the Complaint, but this is a motion for summary judgment, not a motion to dismiss.  At this stage, after the parties have completed discovery, it is incumbent upon the Trustee to present sufficient facts to raise triable issues of fact in support of his claims.  He has not, even drawing inferences most favorably to him.  The Trustee's brief in support of his opposition to summary judgment and in support of his own motion for summary judgment does not contain a single word directed to fiduciary duty, except the summary from the Complaint.

Similarly, the Trustee does not present facts to support his claim for equitable subordination of Fuld's claim.  It is readily apparent that Fuld was an insider.  The Trustee does not, however, present any facts that the transactions relating to the Repayment were not in Debtor's best interest.  Instead, the Trustee alludes to Fuld's "litigation tactics" harming the Debtor's estate and cites language from cases that suggest that protracted and unjustified litigation tactics may justify subordination.  *Schubert v. Lucent Technologies, Inc.* (*In re Winstar Communications, Inc.*), 554 F.3d 382, 413 (3d Cir. 2009).  The Court's rulings negate any finding that Fuld's defense was unjustified.

27

## V.  SECTION 502(d)
### (COUNT X)

The Trustee also asks the Court to disallow Fuld's and the Bank's claims which they filed in Debtor's bankruptcy case.  The Trustee's request for disallowance depends upon Section 502(d) which provides for disallowance of a claim if the claimant is liable for avoidance recoveries.  The Trustee's Section 502(d) argument does not hold any sway because the Court has decided that the Bank and Fuld are not liable for fraudulent transfers or the receipt of preferences.

## **CONCLUSION**

The Court will enter an Order consistent with its findings and holdings.  The Court will grant summary judgment in favor of the Bank and Fuld, and deny the Trustee's cross-motion for partial summary judgment.


Dated: April 29, 2011

KEVIN GROSS, U.S.B.J.